IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DERIC RON WELCH,<br><br>    Defendant. | Cause No. CR-24-04-GF-BMM<br><br>ORDER |

## INTRODUCTION

A federal grand jury charged Deric Ron Welch ("Welch") with one count of Possession of an Unregistered Silencer in violation of 26 U.S.C. §§ 5841 and 5861(d). (Doc. 2.) Welch filed a motion to suppress all evidence obtained by law enforcement officers resulting from a search of Welch's house and safes therein. (Doc. 22.) The motion requested a *Franks* hearing and challenged the search warrant on the basis that the affidavit in support of the search warrant contained allegedly false or misleading statements. (Doc. 23 at 1–2.) The Government opposes the motion. (Doc. 29.) The Court conducted a hearing on the motion on May 14, 2024. (Doc. 32.) The Court granted and conducted a *Franks* hearing and advised the parties to submit supplemental briefing based on the *Franks* hearing. (*Id.*)

1

## BACKGROUND

Phillips County Sheriff's Deputies responded to a domestic disturbance call on May 27, 2023. (Doc. 24-1 at 2.) The caller, S.S., reported that her and her boyfriend had gotten into a fight and her boyfriend "wouldn't quit beating [her]." (911 call at 00:17–00:23.) S.S. also reported that she was "bleeding all over from him." (*Id.* at 00:24–00:27.) S.S. denied that she needed an ambulance but stated that she needed the cops there because "he won't leave [her] alone." (*Id.* at 00:46–00:54.) S.S. identified her boyfriend as Welch. (*Id.* at 00:56–00:59.) Law enforcement responded to the call, and S.S. reported that Welch had strangled her and threatened to drown her in the bathtub. (Doc. 24-2 at 2.) S.S. further reported to the responding sheriff's deputies that Welch had been selling meth. (*Id.*)

Sheriff's Deputy Taylor Matthews ("Deputy Matthews") spoke with S.S. upon his arrival. (Doc. 24-1 at 2.) S.S. told Deputy Matthews that Welch kept beating her and getting away with it and then said, "do you know he's selling meth?" (Bodycam footage at 00:26–00:38.) Deputy Matthews responded that he knew and asked S.S. where Welch kept the methamphetamine. (*Id.* at 00:36–00:42.) S.S. indicated that the methamphetamine was in a nearby safe. (*Id.* at 00:41–00:44.) S.S. indicated that she had seen the methamphetamine when Welch received it about a week and a half earlier. (*Id.* at 00:45–00:54.) S.S. further indicated that Welch sold the methamphetamine to friends that came around the residence. (*Id.* at 01:40–

2

01:47.) S.S. estimated that at least five to six eight balls would be present in the safe. (*Id.* at 1:53–2:06.)

Deputy Matthews sought a search warrant from the Montana Seventeenth Judicial District Court for the house. A Montana state district court determined that probable caused existed to issue the search warrant. Deputy Matthews then sought a search warrant for two safes located in the house, including the one that S.S. had identified as containing methamphetamine. (Doc. 24.) A search of the safe uncovered methamphetamine, firearms, and the alleged unregistered silencer that resulted in Welch's charges in front of this Court. (Doc. 24-1 at 3–4; Doc. 23 at 2.)

## LEGAL STANDARD

The Fourth Amendment safeguards the right of people from unreasonable searches and seizures. U.S. Const. amend. iv. "A search warrant, to be valid, must be supported by an affidavit establishing probable cause." *Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1052 (9th Cir. 2018). "To prevail on a claim that the police procured a warrant through deception, the party challenging the warrant must show that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Id.* (quoting *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014)).

The Court must strike false statements and supplement the affidavit with statements that the affiant omitted that prove necessary to prevent other statements

in the affidavit from misleading the neutral magistrate. *Frimmel Mgmt., LLC*, 897 F.3d at 1052 (quoting *Ruiz*, 758 F.3d at 1148). "If the corrected warrant is lacking in probable cause, then 'the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.'" *Frimmel Mgmt., LLC*, 897 F.3d at 1052 (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

## DISCUSSION

Welch argues that Deputy Matthews made several false or misleading statements in his affidavit in support of the search warrant. (Doc. 23 at 8–10.) Welch further argues Deputy Matthews omitted important information pertaining to the credibility of S.S. from the affidavit. (*Id.*) Welch argues that Deputy Matthews made these false statements and omissions intentionally to bolster the likelihood of a finding of probable cause. (*Id.*)

The Government counters that the Court should deny Welch's motion to suppress the evidence on two grounds. The Government first contends that Welch has failed to satisfy the requirements of suppression under *Franks*. (Doc. 29 at 4–10.) The Government further argues that the good faith exception applies because law enforcement's reliance on the warrant proved reasonable. (*Id.* at 10–11.)

I. **Whether Deputy Matthews made deliberately false statements or made false statements with reckless disregard for the truth**

A defendant "must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application" to succeed on a *Franks* challenge. *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). The Ninth Circuit determined that a law enforcement officer acted at least with a reckless disregard in *Perkins* where the law enforcement officer filed an affidavit for a search warrant that indicated that the defendant had been charged with possession of child pornography in Canada. *Id.* at 1113, 1117. The law enforcement officer failed to include a copy of the images, failed to disclose that a Canadian magistrate had determined the images to not be pornographic, and failed to disclose an accurate description of the images. *Id.* at 1117. The Ninth Circuit noted "a clear, intentional pattern in [the agent's] actions: he selectively included information bolstering probable cause, while omitting information that did not." *Id.*

The Court finds a similar pattern here. Deputy Matthews's affidavit states that S.S. reported that the safe held at least six to ten eight balls. (Doc. 24 at 3.) Footage from Deputy Matthews's body camera shows that S.S. reported only five to six eight balls. (Bodycam footage at 1:53–2:06.) Deputy Matthews's affidavit also shortened the amount of time that S.S. reported had elapsed between Welch's alleged receipt of the drugs and the application for the search warrant. The body camera footage

5

shows that S.S. reported that Welch received the drugs a week and half earlier. (Bodycam footage at 00:45–00:54.) Deputy Matthews's report acknowledges that S.S. reported that Welch had received the drugs between a week and a week a half earlier. (Doc. 24-1 at 2.) Deputy Matthews's affidavit indicated, however, that S.S. knew that Welch had received the drugs "during the week." (Doc. 24 at 3.) Deputy Matthews also stated in his affidavit that the drugs were "packaged to sell." (*Id.*) Deputy Matthews admitted at the *Franks* hearing that S.S. never made that statement. (Doc. 35 at 44.)

Deputy Matthews's affidavit also states that deputies had observed red marks on S.S.'s neck and bruising on her arms. (*Id.*) Deputy Matthews opined in the affidavit that the marks and bruising showed that S.S. was providing accurate information. (*Id.*) Deputy Matthews failed to take pictures of the marks on S.S.'s neck and failed to mention those marks in his report. (Doc. 24-1 at 2–3.) Footage from Deputy Matthews's body camera shows that Deputy Matthews never mentioned the marks on S.S.'s neck despite expressly asking S.S. whether she had marks on her body from the alleged assault. Deputy Matthews also failed to mention in the affidavit that S.S. specifically indicated that the bruise on her arm was old and not from the assault that day. (Bodycam footage at 11:23–11:26.)

Deputy Matthews testified at the *Franks* hearing that he had forgotten to mention the neck marks in his report. (Doc. 35 at 20.) Deputy Matthews also testified

that he planned to come back in a few days and photograph the marks on S.S.'s neck, as markings associated with strangulation generally become more prominent in the days after the assault. (*Id.* at 33.) Deputy Matthews's own testimony admits, however, that the typical protocol is to take photographs on the day of the assault and again days later. (*Id.*) Deputy Matthews's testimony also indicated that Deputy Matthews never spoke with the other deputies on scene about what they had observed despite including in his affidavit that "[d]eputies" observed the red marks and bruising on S.S.'s neck. (Doc. 35 at 46–47.)

Finally, Deputy Matthews's affidavit includes a statement that Deputy Matthews had been observing Welch's residence and had observed multiple people known to use drugs frequent the residence for short periods of time. (Doc. 24 at 3.) Deputy Matthews admitted in the *Franks* hearing that he had no documentation available to evidence such surveillance. Deputy Matthews provided only vague information on the time of day of the visits to the residence, the frequency of the visits, the length of the visits, and when Deputy Matthews observed these visits.

The Government argues that the misstatements of S.S.'s testimony in Deputy Matthews's affidavit represent "negligence or innocent mistakes" that do not warrant suppression. (Doc. 29 at 9.) This argument would carry greater weight if Deputy Matthews had misstated only one fact. Deputy Matthews misstated, however, S.S.'s statements as to the amount of drugs and when the drugs were received. Deputy

Matthews also included a remark that the drugs were "packaged for sale" despite S.S. never making such comment. Deputy Matthews further included information in his affidavit that he failed to include in his police report and that no other deputy noted in their report—the red marks on S.S.'s neck and bruising on her arms. Deputy Matthews specifically used that information to bolster the credibility of S.S. (Doc. 24 at 3.) The failure to mention the marks on S.S.'s neck in his report and the absence of photographs thereof prove especially important when placed in context. Deputy Matthews arrested Welch for PFMA and was investigating the offense of PFMA-Strangulation. The Court struggles to understand how a deputy could observe fresh marks indicative of strangulation during a domestic disturbance call and fail to mention or photograph those marks.

The Court does not view these false statements and omissions as isolated occurrences. Each false statement or misstatement had the effect of increasing the likelihood of a magistrate finding probable cause for the search. The Court, when viewing all of the false statements together, finds "a clear, intentional pattern in [the officer's] actions: he selectively included information bolstering probable cause." *Perkins*, 850 F.3d at 1117. Welch has met his burden of proving by a preponderance of the evidence that "the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application." *Id.* at 1116.

## II. Whether the false statements in the affidavit proved material to a finding of probable cause

The Court must correct the affidavit and determine whether probable cause exists upon the face of the corrected affidavit. *Frimmel Mgmt., LLC*, 897 F.3d at 1052 (quoting *Ruiz*, 758 F.3d at 1148). Welch urges the Court to remove the statement relating to drug amounts and the timing of when Welch allegedly received the drugs. (Doc. 38 at 3.) The Court finds that excising these statements proves inappropriate. Correcting the drug quantity and timing to reflect the statement provided by S.S. more appropriately accomplishes the goal of a "truthful showing" in the affidavit. *Franks*, 438 U.S. at 164–65.

The corrected affidavit would read that S.S. reported five to six eight balls present in Welch's safe and that S.S. knew that Welch had received the drugs about a week and a half earlier. The corrected affidavit would make no mention that S.S. reported the drugs were "packaged to sell" and would make no mention of red marks on S.S's neck or bruising on her arms. The Court also finds it appropriate to excise from the affidavit the information about Deputy Matthews's prior observations of drug users frequenting Welch's residence.

Welch urges the Court to excise other statements. These statements include the following: (1) that Deputy Matthews observed broken glass and coins strewn throughout the home, showing that a struggle had ensued in the home; (2) that S.S. reported that Welch had struck her and would not allow her to leave; and (3) that

9

Welch exited the residence to speak with a deputy outside. (Doc. 38 at 3.) The Court finds that both Deputy Matthews's report and the footage from his body camera support the first statement that money and broken glass were strewn about the room. The Court finds that the second sentence appears supported by Deputy Matthews's testimony about what the dispatcher relayed to him, which is corroborated in part by the dispatcher's notes. (Doc. 36-1 at 2.) The Court finds that the third sentence proves inconsequential and immaterial to any finding of probable cause. It makes no mention of what Welch reported, what the other officer observed, or any other fact that would lend support to a finding of probable cause related to the drugs.

The corrected affidavit would demonstrate that law enforcement officers received a call for a potential partner/family member assault, that the deputy observed broken glass and coins strewn about indicative of a struggle, and that S.S. reported that Welch was involved in selling drugs. The affidavit would further provide that S.S. identified the location where the drugs were kept, indicated that she had observed the drugs when Welch had received them about a week and a half earlier, and indicated that the safe held approximately five to six eight balls of methamphetamine. The corrected affidavit also would provide that S.S. had "provided intel to Deputy Matthews which proved to be accurate on multiple occasions" and that "[t]he information provided to Matthews from [S.S.] included, but was not limited to, drug intel which led to arrests." (Doc. 38 at 3.)

Welch argues that this information proves insufficient to support a finding of probable cause. Welch highlights that S.S. and Welch had been in a dating relationship and were accusing each other of wrongful conduct. (Doc. 38 at 12.) Welch further highlights that the absence of marks on S.S.'s body undermined her credibility given her report of an assault. (*Id.*) The Court disagrees.

"The probable cause standard for a search warrant is whether, based on common sense considerations, there was 'a fair probability that contraband or evidence of a crime [would] be found in a particular place." *Ruiz*, 758 F.3d at 1148. S.S. previously had provided reliable information to Deputy Matthews, which included drug intel that had resulted in arrests. Deputy Matthews also observed indicators of a struggle. These facts increase the credibility of S.S. and outweigh the doubt in credibility raised by the lack of marks from the assault. *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000).

The affidavit included sufficient indicia of reliability for the neutral magistrate to conclude that a fair probability existed that drugs would be located in the safe. S.S. was known and not an anonymous informant. *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006). S.S. had a "track record of reliability" as described by Deputy Matthews in the affidavit. *Id.* at 908; *see also* (Doc. 24 at 3). S.S. reported the information from personal observations from spending time in the residence and around Welch and as Welch's girlfriend. *See Rowland*, 464 F.3d at 908; *Ewing v.*

*City of Stockton*, 588 F.3d 1218, 1224–25 (9th Cir. 2009). Probable cause exists on the face of the corrected affidavit. Accordingly, "no constitutional error has occurred." *Ruiz*, 758 F3d at 1148.

## CONCLUSION

The Court will deny Welch's motion to suppress. The Court finds that Deputy Matthews recklessly made false statements or omissions in the affidavit for the search warrant. The Court finds, however, that probable cause remains after correcting the affidavit such that suppression proves unwarranted.

## ORDER

Accordingly, **IT IS ORDERED** that Welch's Motion to Suppress (Doc. 22) is **DENIED**.

DATED this 31st day of May, 2024.

Brian Morris, Chief District Judge
United States District Court